IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GLENN EVANS, | ) | |
| Plaintiff; | ) | Case No. |
| | ) | |
| | ) | |
| v. | ) | Judge: |
| | ) | |
| | ) | Magistrate Judge: |
| CITY OF CHICAGO, | ) | |
| a municipal corporation; and | ) | |
| DONALD J. O'NEILL, | ) | |
| in his individual and official capacity. | ) | Jury Trial Requested |
| | ) | |

## COMPLAINT

NOW COMES Plaintiff, GLENN EVANS ("Plaintiff"), by and through their attorneys, Henderson Parks, LLC, complaining of Defendants, THE CITY OF CHICAGO, a municipal corporation, and DONALD J. O'NEILL, in his official and individual capacity ("Defendants"), and states as follows:

## NATURE OF THE ACTION

1. This is an employment action brought under 42 U.S.C. §§ 1981(a) and 1983 to correct the retaliation carried out against Plaintiff by the Defendants under color of law; to redress the deprivation of constitutional rights guaranteed under the First and Fourteenth Amendments of the United States Constitution; and to address the real and intentional acts of race discrimination endured by Plaintiff in the form of a hostile work environment created and proliferated by the Defendants.

**JURISDICTION AND VENUE**

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(3) & (4), which confers original jurisdiction upon this Court in a civil action to redress the deprivation of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States under color of any State law, statute, ordinance, regulation, custom, or usage, and to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

3.      The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court in a civil action arising under the Constitution or laws of the United States.

4.      The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

5.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), because Defendant has its headquarters, can be found, and conducts all its business within the Northern District of Illinois, and because the unlawful conduct alleged herein was committed and continues to occur within the boundaries of the Northern District of Illinois.

**PARTIES**

6.      Plaintiff GLENN EVANS ("Commander Evans") is a Black man and a resident of the Northern District of Illinois.

7.      Commander Evans has been employed with the Chicago Police Department ("CPD") as a sworn law enforcement officer since 1986. Throughout his employment, Commander Evans has performed his duties in accordance with the CPD's legitimate job expectations.

8. Commander Evans was promoted to the position of commander in August 2012.

9. Commander Evans's exemplary history with the CPD includes 177 awards and commendations.

10. Commander Evans's primary job duties do not consist of conducting investigations into allegations of police misconduct made against members of CPD, such as allegations of excessive force, domestic violence, coercion, and bias-based verbal abuse.

11. Commander Evans's primary job duties do not consist of investigating fraud and malfeasance within an independent agency of the City of Chicago outside of the CPD.

12. Commander Evans's primary job duties do not consist of blowing the whistle on the malfeasance and corruption within an independent agency of the City of Chicago.

13. Defendant CITY OF CHICAGO ("City") is a municipal corporation in the State of Illinois, County of Cook, incorporated under the laws of the State of Illinois.

14. The CITY OF CHICAGO police department ("CPD" or "Department") is a department within the City.

15. The City employs personnel of the CPD and is responsible for the lawful operation, administration, maintenance, training, and control over the CPD.

16. Each act and/or omission alleged in this COMPLAINT was done under color of authority and under color of law, as well as under color of the statutes, ordinances, regulations, policies, practices, customs, and usages of the City.

17. At all times relevant to this COMPLAINT, Defendant DONALD J. O'NEILL was acting under color of law as the Director of Human Resources for CPD.

18. Defendant DONALD J. O'NEILL, as the Director of Human Resources for CPD, had final or delegated final policy-making authority for the City of Chicago regarding personnel decisions within the City of Chicago Police Department as they applied to Commander Evans.

19. Defendant DONALD J. O'NEILL is an employer as defined by the Illinois Whistleblower Act as he was acting within the scope of his final policy-making authority on behalf of the City of Chicago regarding Commander Evans.

## ALLEGATIONS

20. On or around January 30, 2013, Commander Evans along with other police officers of the CPD arrested Rickey Williams ("Williams").

21. A few days later, Williams filed a complaint with the Independent Police Review Authority ("IPRA").

22. IPRA is an independent agency of the City of Chicago, separate from CPD, created in 2007 in response to public concerns about how allegations of police misconduct were being investigated.

23. IPRA is headed by a civilian Chief Administrator and staffed entirely with civilian investigators.

24. IPRA conducts investigations into all allegations of misconduct made against members of CPD, including allegations of excessive force, domestic violence, coercion, and bias-based verbal abuse. IPRA also investigates some misconduct cases even if no allegations have been made, including all cases where a CPD member discharges a firearm, stun gun, or taser in a manner that could potentially strike someone, or when a person dies or sustains a serious injury while in police custody, or where an extraordinary occurrence occurs in a lockup facility.

25. In his complaint with IPRA, Williams alleged, *inter alia*, that during his arrest Commander Evans shoved a gun down his throat with his left hand and held a taser to his groin with his right hand.

26. Commander Evans never shoved a gun down Williams's throat.

27. Commander Evans was not carrying a taser on the day of the Williams arrest.

28. When shown a photograph lineup, Williams was unable to identify Commander Evans.

29. Around August 28, 2014, Commander Evans's Firearm Owners Identification ("FOID") card was revoked due to the pending investigation of the Williams matter.

30. On or about September 17, 2014, Commander Evans was inexplicably indicted.

31. Evans was charged with two counts of aggravated battery with a deadly weapon and seven counts of official misconduct, all felonies.

32. Evans was placed on no-pay status in mid-October 2014.

## PROTECTED SPEECH

33. In May 2015, Commander Evans filed a complaint with the City's Office of the Inspector General concerning IPRA.

34. In his complaint, Commander Evans described, *inter alia*, the systemic corruption and malfeasance within IPRA that ultimately contaminates and compromises any investigation it is charged to conduct into police misconduct.

35. Commander Evans specifically stated that IPRA leaked confidential information to the media about his investigation and that civilian investigators participated in his investigation despite having conflicts of interest.

## TRIAL AND EXONERATION

36. On December 14, 2015, the Circuit Court found Commander Evans not guilty of all charges.

37. In rendering its decision, the Circuit Court noted the inconsistencies in Williams' story of events; his inability to identify Evans in the photo array; the impossibility of Williams' version of the story considering the physical evidence (or lack thereof); that the DNA did not determine that Evans was guilty; and, IPRA's botching their investigation.

## RETALIATION AND DISCRIMINATION

38. Commander Evans's FOID card was reinstated in or around February 2016.

39. On or around April 25, 2016, Evans returned to work.

40. Upon his return, Commander Evans was demoted to Lieutenant, removed from active police duty and tasked with a "desk job" all against his wishes.

41. In addition, Commander Evans was denied back pay and denied restoration of all compensatory time taken, medical benefits lost, and the loss of seniority.

42. Soon after his return, senior management threatened and bullied Commander Evans to retire.

43. Commander Evans was threatened with additional investigations, possible federal prosecution, and ultimate termination if he did not voluntarily retire.

44. On May 25, 2016, Defendant O'Neill denied Commander Evans's request for restoration of back pay and restoration of rank and benefits.

## COUNT I
## RETALIATION IN VIOLATION OF THE FIRST AMENDMENT
## 42 U.S.C. § 1983
**(against all Defendants)**

45. Plaintiff re-alleges paragraphs 1 through 44 and incorporates them as if fully set forth herein.

46. The First Amendment to the United States Constitution confers upon an individual the right to free speech. Public employers may not retaliate against an employee who chooses to exercise that right by speaking out on matters of public concern.

47. A police officer, as a public employee, does not shed his First Amendment rights at the steps of the government building.

48. In May 2015, Commander Evans spoke out on a matter of public concern and blew the whistle on the systemic corruption and malfeasance within the IPRA.

49. Commander Evans was under no job obligations to complain of IPRA.

50. Commander Evans's speech is protected by the First Amendment.

51. Any further determinations concerning Commander Evans's protected speech requires the resolution of several questions of fact that Commander Evans looks forward to presenting to a jury.

52. Defendants CITY OF CHICAGO and O'NEILL retaliated against Plaintiff for engaging in protected speech by allowing Commander Evans to be indicted on felony charges and tried despite the lack of evidence.

53. Upon his return to work, after being exonerated at trial, Defendants again retaliated against Commander Evans by demoting him to Lieutenant, removing him from active police duty and tasking him with a "desk job" all against his wishes.

54. Defendants continue to retaliate against Commander Evans every day by threatening and bullying him to retire and by both denying him back pay and restoration of all compensatory time taken, medical benefits lost, and the loss of seniority.

55. Commander Evans's retaliation at the hands of the Defendants acts as a daily deterrence against free speech among police officers, especially senior officers within the CPD.

56. Commander Evans's speech was a motivating factor in each of his adverse employment actions since his exoneration.

57. The retaliation against Plaintiff was carried out by Defendants O'NEILL who had been delegated final policy-making authority with respect to the actions taken.

58. Defendant CITY OF CHICAGO, at all times relevant hereto, employed Defendant O'NEILL and is responsible for the acts of Defendant O'NEILL, as he was acting within the scope of his employment and pursuant to a custom, policy, and practice of violating individuals' rights to freedom of speech under the First Amendment to the Constitution of the United States.

59. Defendant CITY OF CHICAGO failed to train its managers, supervisors, and employees to prevent and/or remedy retaliation. Defendant's failure to train was deliberately indifferent to the rights of Plaintiff and others.

60. Defendants' actions were taken pursuant to a policy, custom, or pattern of retaliation against individuals who exercise their right to free speech.

61. The conduct of Defendants was willful, wanton, intentional, malicious, and deliberately indifferent to Plaintiff's rights.

62. As a result of Defendants' unlawful conduct, Plaintiff has lost wages and other employment benefits, has suffered emotional distress, embarrassment, and humiliation, and his career has been damaged as a result of Defendants' conduct. Plaintiff has also suffered additional non-pecuniary losses as a direct result of Defendants' conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a. Declare that Defendants' conduct was in violation of Plaintiff's rights under the United States Constitution.

b. Enter preliminary and permanent relief enjoining the discriminatory conduct and preventing ongoing and future harm to Plaintiff;

c. Award Plaintiff the value of the compensation and benefits lost as a result of Defendants' unlawful conduct including lost wages and seniority, back pay, front pay, and lost benefits, including, without limitation, the value of any lost benefits that would otherwise have been available to Plaintiff without the discrimination;

d. Award Plaintiff damages for emotional distress and compensatory damages;

e. Award Plaintiff punitive damages;

f. Reinstatement of rank and title to Plaintiff;

g. Award Plaintiff the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees; and

h. Grant Plaintiff such other and further relief as this Court finds necessary and proper.

**COUNT II**
**DISCRIMINATION IN VIOLATION OF THE FOURTEENTH AMENDMENT**
**42 U.S.C. § 1983**
**(against all Defendants)**

63. Plaintiff re-alleges paragraphs 1 through 62 and incorporates them as if fully set forth herein.

64. The Fourteenth Amendment to the United States Constitution protects persons from being subjected to hostile work environments based on race by persons acting under color of state law.

65. Upon his return to work, after being exonerated at trial, Commander Evans has been treated less favorably than similarly-situated non-Black police officers and employees based on his race.

66. Defendants discriminated against Commander Evans based on his race by demoting him to Lieutenant, removing him from active police duty and tasking him with a "desk job" all against his wishes.

67. Defendants continue to discriminate against Commander Evans based on his race every day by threatening and bullying him to retire and by both denying him back pay and restoration of all compensatory time taken, medical benefits lost, and the loss of seniority.

68. Defendant O'NEILL under color of law intentionally denied Commander Evans's request for restoration of back pay and restoration of rank and benefits based on his race on direct orders and/or based upon written or unwritten policies and/or practices within the City and the CPD.

69. The discrimination experienced by Commander Evans under color of law based on race was severe, pervasive, and ongoing, and created and proliferated a hostile work environment.

70. This hostile and abusive work environment is perpetuated, sustained, and created by deliberate acts allowed and encouraged by Defendant CITY OF CHICAGO under which Commander Evans's suffers every day.

71. Defendant CITY OF CHICAGO, at all times relevant hereto, employed Defendant O'NEILL and is responsible for the acts of Defendant O'NEILL as he was acting within the scope of his employment and pursuant to a custom, policy, and practice of violating individuals' rights to equal protection under the Fourteenth Amendment.

72. Defendant CITY OF CHICAGO has a duty and obligation to properly train, supervise, and discipline their employees within the CPD to prevent them from violating the civil rights of others through the power and authority they have under the color of law.

73. Defendant CITY OF CHICAGO has failed to properly train, supervise, and discipline their employees within the CPD, which has therefore given them the comfort and sense that they can violate the civil rights of others and not be disciplined.

74. This lack of training, supervision, and discipline fosters a climate in the ranks of the Department that if an individual's rights are violated, employees do not have to report it, can look the other way, and maintain a code of silence.

75. This comfort along with the persistent and defiant code of silence motivates and bolsters the open and notorious, hostile, and abusive work environment based on race that is created and proliferated in the CPD.

76. Consequently, the rights of Commander Evans are violated in an ongoing climate of abuse and hostility under color of law.

77. As a result of the City of Chicago's discriminatory actions and inactions, Commander Evans has suffered lost wages and benefits, fear, insult, pain, suffering, emotional distress, physical distress, humiliation, anxiety, and embarrassment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a. Declare that Defendants' conduct was in violation of Plaintiff's rights under the United States Constitution.

b. Enter preliminary and permanent relief enjoining the discriminatory conduct and preventing ongoing and future harm to Plaintiff;

c. Award Plaintiff the value of the compensation and benefits lost as a result of Defendants' unlawful conduct including lost wages and seniority, back pay, front pay, and lost benefits, including, without limitation, the value of any lost benefits that would otherwise have been available to Plaintiff without the discrimination;

d. Award Plaintiff damages for emotional distress and compensatory damages;

e. Award Plaintiff punitive damages;

f. Reinstatement of rank and title to Plaintiff;

g. Award Plaintiff the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees; and

h. Grant Plaintiff such other and further relief as this Court finds necessary and proper.

## COUNT III
## RETALIATION
## 42 U.S.C. § 1981
**(against Defendant O'Neill)**

78. Plaintiff re-alleges paragraphs 1 through 77 and incorporates them as if fully set forth herein.

79. In May 2015, Commander Evans spoke out on a matter of public concern and blew the whistle on the systemic corruption and malfeasance within the IPRA.

80. Commander Evans was under no job obligations to complain of IPRA.

81. Commander Evans's speech is protected by the First Amendment.

82. Any further determinations concerning Commander Evans's protected speech requires the resolution of several questions of fact that Commander Evans looks forward to presenting to a jury.

83. Upon his return to work after being exonerated at trial, Defendant O'NEILL retaliated against Commander Evans by demoting him to Lieutenant and tasking him with a "desk job" against his wishes.

84. Commander Evans's retaliation at the hands of Defendant O'NEILL acts as a daily deterrence against free speech among police officers, especially senior officers within the CPD.

85. Commander Evans's speech was a motivating factor in each of the adverse employment actions he has suffered since his exoneration.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a. Declare that Defendants' conduct was in violation of Plaintiff's rights under the United States Constitution.

b. Enter preliminary and permanent relief enjoining the discriminatory conduct and preventing ongoing and future harm to Plaintiff;

c. Award Plaintiff the value of the compensation and benefits lost as a result of Defendants' unlawful conduct, including lost wages and seniority, back pay, front pay, and lost benefits, including, without limitation, the value of any lost benefits that would otherwise have been available to Plaintiff without the discrimination;

d. Award Plaintiff damages for emotional distress and compensatory damages;

e. Award Plaintiff punitive damages;

  f. Reinstatement of rank and title to Plaintiff;

  g. Award Plaintiff the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees; and

  h. Grant Plaintiff such other and further relief as this Court finds necessary and proper.

## COUNT IV
## DISCRIMINATION
## 42 U.S.C. § 1981
### (against Defendant O'Neill)

86. Plaintiff re-alleges paragraphs 1 through 85 and incorporates them as if fully set forth herein.

87. Defendant O'NEILL intentionally discriminated against Commander Evans based on his race in his assignment and demotion within the CPD after being exonerated from criminal charges.

88. Defendant O'NEILL intentionally discriminated against Commander Evans based on his race when he denied his request for restoration of back pay and restoration of rank and benefits based on direct orders or based upon written or unwritten policies and/or practices within the City and the CPD.

89. The discrimination based on race experienced by Commander Evans is severe, pervasive, and ongoing, and creates, sustains, and proliferates a hostile and abusive work environment.

90. As a result of Defendant O'NEILL 's discriminatory actions and inactions, Commander Evans has suffered lost wages and benefits, fear, insult, pain, suffering, emotional distress, physical distress, humiliation, anxiety, and embarrassment.

91. Similarly-situated, non-Black employees have been treated better than Commander Evans.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a. Declare that Defendants' conduct was in violation of his rights under the United States Constitution.

b. Enter preliminary and permanent relief enjoining the discriminatory conduct and preventing ongoing and future harm to Plaintiff;

c. Award Plaintiff the value of the compensation and benefits lost as a result of Defendants' unlawful conduct including lost wages and seniority, back pay, front pay, and lost benefits, including, without limitation, the value of any lost benefits that would otherwise have been available to Plaintiff without the discrimination;

d. Award Plaintiff damages for emotional distress and compensatory damages;

e. Award Plaintiff punitive damages;

f. Reinstatement of rank and title to Plaintiff;

g. Award Plaintiff the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees; and

h. Grant Plaintiff such other and further relief as this Court finds necessary and proper.

## COUNT V
## VIOLATION OF ILLINOIS WHISTLEBLOWER ACT
**(against all Defendants)**

92. Plaintiff re-alleges paragraphs 1 through 91 and incorporates them as if fully set forth herein.

15

93. The Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.*, states that "an employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation."

94. By their conduct as alleged herein, Defendants intentionally retaliated against Plaintiff in response to his complaint to the Office of the Inspector General detailing corruption and malfeasance within the IPRA.

95. The conduct of Defendants was willful, wanton, intentional, malicious and deliberately indifferent to Plaintiff's rights under Illinois law.

96. As a result of Defendants' unlawful conduct, Plaintiff has lost wages and other benefits, has suffered emotional distress, embarrassment, and humiliation, and his career has been damaged. Plaintiff has suffered additional non-pecuniary losses as a direct result of Defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a. Declare that Defendants' conduct was in violation of Illinois law and enjoin Defendant and all officers, agents, employees, and persons in active concert or participation with them from engaging in further unlawful conduct prohibited by Illinois law;

b. Award Plaintiff compensatory damages;

c. Award Plaintiff emotional distress damages;

d. Award Plaintiff punitive damages;

e. Award Plaintiff reasonable attorney's fees, costs, and disbursements; and,

f. Award Plaintiff any and all other relief as the Court deems just on the premises.

## **JURY TRIAL DEMAND**

Plaintiff hereby requests a jury trial on all issues of fact and law raised by the allegations contained in this Complaint.

**DATED:** July 11, 2017

>Respectfully Submitted,
>
>/s/ William C. Martin
>Attorney for Plaintiff

William C. Martin
Rebecca R. Kaiser
**HENDERSON PARKS, LLC**
140 South Dearborn, Suite 1020
Chicago, IL 60603
Telephone: (312) 262-2900
Facsimile: (312) 262-2901