**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GLENN EVANS, an individual | ) | Case No. 17-cv-05122 |
| | ) | |
| Plaintiff, | ) | Judge Robert W. Gettleman |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, a municipal corporation; and | ) | |
| DONALD J. O'NEILL in his individual and official | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**</u>

This lawsuit is an attempt to litigate and relitigate claims Plaintiff Glenn Evans could have and should have brought in his previously dismissed federal lawsuit involving the same underlying facts. Indeed, in 2016, Evans brought federal civil e rights claims in this district related to the same underlying events alleged here; namely, his participation in the arrest of Rickey Williams, his May 2015 complaint to the Office of Inspector General ("OIG"), his acquittal on criminal charges stemming from the Williams arrest, and the City of Chicago's (and its employees') supposed retaliation in response to Evans's OIG complaint and acquittal. The Honorable Manish S. Shah dismissed those claims in May 2017. Though Judge Shah gave Evans the opportunity to file an amended complaint, Evans declined to do so and instead filed a voluntary motion to dismiss his federal claims with prejudice.

Nevertheless, Evans brought the instant lawsuit relating to the exact same events; namely, his arrest of Williams, his May 2015 OIG complaint, his acquittal, and the City's (and one of its employee's) supposed retaliation in response to his OIG complaint and acquittal. Evans's

complaint is nothing more than an attempt to get a second bite of the apple in front of a different judge, and is barred by the doctrine of res judicata. Accordingly, the Court should dismiss the entire complaint with prejudice.

Alternatively, Evans's retaliation claims should be dismissed for failure to state a claim, and his claim under the Illinois Whistleblower Act should be dismissed because it is time-barred and improperly names an individual defendant.

## BACKGROUND

### I.     Evans's First Lawsuit Against the City

On July 28, 2016, Evans, a police officer with the Chicago Police Department, filed a lawsuit against the City and a number of its employees. *See Evans v. City of Chicago et al.*, 16-cv-07665 (Shah, J.), D.E. 1, attached as Exhibit A ("*Evans I*"). In *Evans I*, Evans attempted to assert two federal claims under 42 U.S.C. § 1983 for retaliatory inducement to prosecute and retaliatory prosecution, as well as state claims for malicious prosecution, false light, tortious interference with prospective economic advantage, civil conspiracy, respondeat superior, and indemnification. Evans claimed that the City should be held liable for his federal claims against individual City employees. *See* Ex. A, ¶¶ 186-188.

Evans's allegations in *Evans I* related to the same excessive force complaint alleged in this case; namely, the arrest of Rickey Williams.  Ex. A, ¶¶ 32-48. As in this case, Evans alleged in *Evans I* that events that took place during the Williams investigation (and subsequent prosecution) led to retaliatory adverse employment actions against him, including his supposed demotion and the purported reopening of a separate Independent Police Review Authority ("IPRA") investigation into his use of excessive force. Ex. A, ¶¶ 32-47.

Specifically, Evans alleged that shortly after Evans arrested Williams, Williams filed a complaint with IPRA alleging that Evans shoved a gun down Williams's throat and held a taser

to Williams's groin. *Id*. ¶ 49. Evans further alleged that an IPRA investigator leaked confidential information (including that Williams's DNA had been found on Evans's gun) related to the Williams complaint to the media, which led to a series of news articles about Evans. *Id*. ¶¶ 87-88, 97-102. Evans claimed that on September 17, 2014, as a result of this media attention and political pressure, the Cook County State's Attorney's Office indicted him for his conduct during the arrest of Williams. *Id*. ¶ 103.

The *Evans I* complaint also alleged that on May 19, 2015, Evans filed a complaint with the Office of Inspector General ("OIG"). *Id*. ¶ 115. In his OIG complaint, Evans alleged that an IPRA employee leaked confidential information about him to the media and that two of the individual defendants in *Evans I* (they are not named as defendants here) were allowed to participate in the Williams investigation despite having conflicts of interest with Evans. *Id*. ¶ 116.

Meanwhile, on December 14, 2015, Evans was acquitted of the criminal charges brought against him as a result of the Williams arrest. *Id*. ¶124. Evans alleged that he returned to work as a CPD officer on April 25, 2016, and was assigned "against his wishes" to desk duty. *Id*. ¶ 125. CPD purportedly denied Evans back pay, and Evans alleged that he received significant pressure from his superiors at CPD to retire (none of these unnamed "superiors" were defendants in *Evans I*, nor are they named as defendants here). *Id*. ¶126-132. Evans further alleged that a separate IPRA investigation was reopened in retaliation for his OIG complaint against IPRA. Ex. A, ¶¶ 32-47.

The defendants in *Evans I* moved to dismiss the complaint, and Judge Shah granted the motions and dismissed the *Evans I* complaint on May 11, 2017. *See* Exhibit B. In particular, Judge Shah held that Evans's allegation that an IPRA investigation was reopened in retaliation

for his OIG complaint in violation of his First Amendment rights failed to state a viable §1983 claim. *Id.* at pp. 9-16. Judge Shah provided Evans with an opportunity to file an amended complaint. *Id.*

Notably, in *Evans I*, Evans asked Judge Shah on two separate occasions to recuse himself because each of the defendants in the case was represented by a former Assistant United States Attorney. *See Evans I*, D.E. 35, 49. Judge Shah denied these requests. *Evans I*, D.E. 51.

After Evans's complaint was dismissed, he did not utilize the opportunity to replead his claims in front of Judge Shah. Instead, Evans filed a voluntary motion to dismiss his federal § 1983 claims with prejudice. Exhibit C. Judge Shah granted Evans's motion for voluntary dismissal with prejudice as to Evans's federal claims, and without prejudice as to Evans's state claims.[1] Exhibit D. Evans did not appeal.

## II.     Evans's Allegations in the Current Lawsuit

Evans filed this lawsuit ("*Evans II*") roughly a month after Judge Shah entered the final dismissal order. The factual allegations in this case are essentially identical to *Evans I*, albeit slightly more succinct. Specifically, Evans again names the City of Chicago as a defendant, this time along with City employee Donald O'Neill.[2] Evans further alleges that on January 30, 2013, Evans and other CPD officers arrested Rickey Williams. Compl. ¶20.[3] Shortly thereafter, Williams filed a complaint with IPRA. *Id.* ¶ 21. Evans characterizes Williams's IPRA complaint in essentially the same way as he did in *Evans I*, namely, that Williams complained that Evans

---

[1] On August 25, 2017, Evans refiled his state claims for malicious prosecution, tortious interference with prospective economic advantage, respondeat superior, and indemnification in the Circuit Court of Cook County.

[2] O'Neill was not named as a defendant in *Evans I*. At the time of the alleged retaliation, O'Neill was the Director of Human Resources for CPD. He is currently the Director of Labor Relations for the City's legal department.

[3] For purposes of their motion to dismiss, the Defendants accept Evans' allegations as true. Defendants do not waive their right to challenge Evans's factual assertions and raise additional arguments and defenses in the event the Court denies the motion to dismiss.

shoved a gun down Williams's throat and held a taser to Williams's groin. *Id.* ¶25. Evans also alleges that he was indicted on September 17, 2014, based on his conduct during the Williams arrest. *Id.* ¶¶ 30-31.

Just as in *Evans I*, Evans alleges here that in May 2015, he filed a complaint with the OIG concerning IPRA. *Id.* ¶ 33. Evans also alleges that his complaint described "the systemic corruption and malfeasance within IPRA," as well as IPRA's leak of confidential information about Evans's investigation to the media and the involvement of investigators that allegedly had a conflict of interest. *Id.* ¶¶ 34-35.

As in *Evans I*, Evans again alleges in the instant complaint that he was found not guilty in his criminal case. *Id.* ¶ 36. He also alleges that he returned to work on April 25, 2016, and "[u]pon his return" was allegedly demoted to Lieutenant, removed from active police duty, and tasked with a desk job against his wishes. *Id.* ¶ 40. He further claims (like in *Evans I*) that "[s]oon after his return," he was bullied by "senior management" to retire, and was threatened with additional investigations and termination if he did not retire. *Id.* ¶¶ 42-43. Evans alleges that on May 25, 2016, Defendant O'Neil denied Evans's request for restoration of back pay, rank, and benefits. *Id.* ¶ 44. Evans claims this decision was made in retaliation for his OIG complaint in violation of his First Amendment rights and the result of racial discrimination. *Id.* ¶¶ 55-91.

## ARGUMENT

The Court should dismiss Evans's complaint in its entirety. When ruling on a Rule 12(b)(6) motion to dismiss, a court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Sprint Spectrum L.P. v. City of Carmel, Indiana*, 361 F.3d 998, 1001 (7th Cir. 2004). Although this ordinarily entails an examination merely of the allegations in the complaint, a court may also take judicial notice of matters in the public record, including pleadings and orders in previous cases. *See Gen. Elec.*

*Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir.1997) (collecting cases). A complaint must describe a claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which the claim rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must include factual allegations that plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level." *Id*.

This standard demands that a complaint allege more than legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

**I.    The Court Should Dismiss Evans's Instant Lawsuit on the Basis of Res Judicata**

The Court should dismiss Evans's complaint because his claims are barred by the doctrine of res judicata. Res judicata bars the litigation of claims that were raised or could have been raised in a prior proceeding. *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1365 (7th Cir. 1988). The applicability of res judicata hinges on three elements: "(1) an identity of the parties or their privies; (2) identity of the cause of action; and (3) a final judgment on the merits." *Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008) (citing *Prochotsky v. Baker & McKenzie*, 966 F.2d 333, 334 (7th Cir. 1992)). Where these three elements are satisfied, res judicata bars not only those claims which were actually decided in a prior suit, but also all claims which could have been raised in that action. *See Nevada v. United States*, 463 U.S. 110, 129-130 (1983) (res judicata or claim preclusion provides that a final judgment is final "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."). Here, all three elements are met, and the Court should dismiss Evans's complaint with prejudice.

A.     *Evans I* and *Evans II* Involve the Same Parties

Evans named the City and a number of its current and former employees as defendants in his first lawsuit (Evans sought to hold the City accountable for the individual defendants' supposed actions).  Evans also filed this case against the City and a single employee, Donald O'Neill, and attempts to hold the City liable for Defendant O'Neill's purported conduct. Though Mr. O'Neill was not named as a defendant in *Evans I*, "[a] government and its officers are in privity for purposes of res judicata." *Mandarino v. Pollard*, 718 F. 2d 845, 850 (7th Cir. 1983). Thus, the first element of res judicata is met.

B.     *Evans I* and *Evans II* Arise from the Same Operative Facts

A cause of action consists of a "single core of operative facts giving rise to a remedy." *Doe v. Allied Signal, Inc.*, 985 F.2d 908, 913 (7th Cir. 1993). "Two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations." *Herrmann v. Cencom Cable Assoc., Inc.*, 999 F.2d 223, 226 (7th Cir. 1993) (citations omitted). "The inquiry, focusing on the facts of a situation, is intended to discover whether the plaintiff could have raised the issue in the first suit." *Doe*, 985 F.2d at 913; *see also*, *Green v. Illinois Dept. of Transp.*, 609 F. Supp. 1021, 1024 (N.D. Ill. 1985) (holding that res judicata bars not only those matters which were actually raised in the prior action, but any matter which might have been raised). In other words, "a subsequent suit is barred if the claim on which it is based arises from the same incident, events, transaction, circumstances, or other factual nebula as a prior suit that had gone to final judgment." *Okoro v. Bohman*, 164 F.3d 1059, 1062 (7th Cir.1999).

*Evans I* and *Evans II* rest on the same operative facts and circumstances. The two lawsuits each assert the following essentially identical allegations: (i) After Evans arrested Rickey Williams, Williams filed a complaint against Evans with IPRA; (ii) William's complaint with IPRA resulted in Evans's indictment; (iii) Evans filed a complaint with the OIG alleging

7

misconduct within IPRA, specifically that IPRA leaked confidential information about Evans to the media and that IPRA allowed two officers to participate in the investigation of Evans's arrest of Williams despite alleged conflicts of interest; and (iv) when Evans returned to work, he was demoted, placed on desk duty despite his objections, allegedly pressured to retire by his unnamed superiors, and refused back pay and restoration of rank and benefits. The only discernable difference between *Evans I* and *Evans II* is that one of the theories of liability in *Evans II* (purported racial discrimination) was not included in *Evans I* (which focused on supposed First Amendment retaliation). Yet such differences are irrelevant for purposes of res judicata. *See Car Carriers Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986) (holding that "a mere change in legal theory does not create a new cause of action" for purposes of res judicata). Evans's two lawsuits rely on the same factual allegations and thus the second element of res judicata is met.

### C. Final Judgement on the Merits

Judge Shah dismissed the federal claims in *Evans I*. Judge Shah's dismissal order also provided Evans with an opportunity to file an amended complaint.   However, a few weeks later, Evans filed a motion for voluntary dismissal with prejudice of his federal claims, which the court granted.

A dismissal with prejudice is a final judgment on the merits. *U.S. v. Outboard Marine Corp.*, 104 F.R.D. 405, 410 (N.D. Ill. 1984). Federal courts give the same preclusive effect to voluntary dismissals with prejudice when applying the principles of res judicata. *Id.* Accordingly, all three elements of res judicata as satisfied here, the Court should dismiss this case with prejudice.

## II. Alternatively, the Complaint Fails to State a Claim for Counts I, III, and V.

In the event the Court does not dismiss the complaint in its entirety on the basis of res judicata, Evans's retaliation claims (Counts I and III) should be dismissed for failure to state a

8

claim, and the and Illinois Whistleblower Act Claim (Count V) should be dismissed because it is time barred.

### A. The Court Should Dismiss Evans's First Amendment Retaliation Claims

In Counts I and III, Evans purports to allege First Amendment retaliation claims under 42 U.S.C. §§ 1981 and 1983. In these claims, Evans alleges that the defendants retaliated against him in violation of the First Amendment because the defendants allowed Evans to be prosecuted despite a lack of evidence and, upon Evans's return to work, demoted Evans, refused back pay, and bullied him purportedly in retaliation for his complaint with the OIG. To state a claim for retaliation under §§ 1981 and 1983, the individual must show "(1) that his speech was constitutionally protected; (2) that the protected speech was the 'but-for' cause of the employer's action; and (3) that he suffered a deprivation because of the employer's action." *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). These claims should be dismissed because Evans's speech was not protected and his allegations of retaliatory motive are wholly conclusory.

### 1. Evans's Did Not Engage in Protected Speech

First, the Court should dismiss Evans's retaliation claims because Evans did not engage in speech or association activity protected by the First Amendment. "For a public employee's speech to be protected under the First Amendment, the employee must establish that she spoke as a citizen on a matter of public concern." *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). Whether speech is constitutionally protected is a question of law for the court to determine. *Kubiak*, 810 F.3d at 481.

### a. Evans Did Not Speak as a Private Citizen

Evans fails to allege facts that plausibly suggest that he spoke or associated as a private citizen and not as part of his role as a public employee. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First

Amendment purposes . . . ." *Kubiak*, 810 F.3d at 481 (quoting *Garcetti*, 547 U.S. at 421). The determination of a public employee's official duties "requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." *Kubiak*, 810 F.3d at 481 (quoting *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008)). Public employees act pursuant to their official duties when they report acts of misconduct as required as part of their professional responsibilities or make other complaints "intimately connected with [their] professional duties." *See Kubiak*, 810 F.3d at 482; *Houskins*, 549 F.3d at 491; *Spiegla v. Hull*, 481 F.3d 961, 966-67 (7th Cir. 2007).

Evans acted pursuant to his official duties when he filed the OIG complaint alleging that IPRA employees involved in the investigation of Williams's excessive force claim against him leaked confidential information to the media and had an undisclosed conflict of interest. The City's Municipal Code provides that every City "employee or official shall report, directly and without undue delay, to the city's Inspector General . . . any and all information concerning conduct which such employee knows or should reasonably know to involve corrupt or other unlawful activity . . . by another city employee or official which concerns such employee's or official's employment or office." Chi. Mun. Code § 2-156-018. A City employee who knowingly fails to report corrupt or unlawful activity to the OIG is subject to discipline up to and including discharge. *Id.* Thus, Evans was required to report the alleged wrongdoing that was the subject of his OIG complaint.[4] As a result, his OIG complaint was not protected by the First Amendment because Evans spoke as part of his public duties at the time he lodged that complaint. Accordingly, Evans has not adequately alleged, nor could he allege, that he engaged in

---

[4] Evans's allegation that he had no such duty to report wrongdoing (*see* Compl. ¶¶ 10-12) is the type of conclusory and "threadbare" allegation that is insufficient following *Iqbal* and *Twombly*, particularly when the allegation is made despite a clear statutorily imposed duty to the contrary.

constitutionally protected speech or association. Counts I and III should therefore be dismissed with prejudice.

### b.     Not a Matter of Public Concern

Evans also fails to allege facts plausibly suggesting that he spoke on a matter of public concern. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." *Kubiak*, 810 F.3d at 483-83 (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). A public employee's grievance on a matter of private interest does not satisfy the "public concern" threshold requirement for a retaliation claim based on the First Amendment. *See Bivens v. Trent*, 591 F.3d 555, 561 (7th Cir. 2010). The Seventh Circuit has explained the "public concern element is lacking as a matter of law if speech concerns a subject of public interest but the *expression* addresses only the personal effect upon the employee." *Id.* (quoting *Marshall v. Porter County Plan Comm'n*, 32 F.3d 1219 (7th Cir. 1994)) (emphasis in original). A court needs to "evaluate whether the employee is speaking (or associating to promote an idea) more like a citizen or a disgruntled employee." *Klug*, 197 F.3d at 857; *see also*, *Connick*, 461 U.S. at 154 ("For it would indeed be a Pyrrhic victory for the great principles of free expression if the Amendment's safeguarding of a public employee's right, as a citizen, to participate in discussions concerning public affairs were confused with the attempt to constitutionalize the employee grievance."); *Januszewski v. Village of Oak Lawn*, No. 05 C 3820, 2007 WL 704454, at *5 (N.D. Ill. March 5, 2007) (granting a motion to dismiss a First Amendment retaliation claim because the "plaintiff complained to her supervisors only regarding sexual harassment that she herself experienced to reach a resolution of her own problem … rather than on a matter of public concern").

Evans's complaint to the OIG was a purely private grievance and not a matter of public concern. Evans alleges that his OIG complaint described "systemic corruption and malfeasance

within IPRA that ultimately contaminates and compromises any investigation….” Compl. ¶ 34.

However, the actual content of his OIG complaint directly belies this assertion. *See* Exhibit E.[5]

Indeed, a cursory review of Evans’s OIG complaint reveals that it addresses only Evans’s

personal grievances with IPRA regarding how IPRA handled an investigation into his alleged

misconduct. *See* Exhibit E. Evans’s OIG complaint does not include allegations of “systemic

corruption and malfeasance” as Evans now alleged. Instead, Evans’s OIG complaint included

allegations regarding his supposed personal mistreatment in an effort to protect his personal

reputation and employment at CPD. Where, as here, a document referenced in a complaint but

not attached to it contradicts the complaint, the document controls. *See Northern Indiana Gun &

Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) (reaffirming the

well-settled rule that when a written instrument contradicts allegations in a complaint, “the

exhibit trumps the allegations”). Evans’s actual OIG complaint reveals that he merely was

speaking on a matter of private concern. Accordingly, Evans has not pled and cannot plead that

he engaged in constitutionally protected speech or association that could form the basis of a First

Amendment retaliation claim. Counts I and III of the Complaint should be dismissed.

## 2. Evans’s Allegation of Retaliatory Motive is Conclusory

Second, the Court should dismiss Evans’s retaliation claims (Counts I and III) because

Evans’s allegations of retaliatory motive and causation are conclusory. A complaint must outline

a violation of the constitution or a federal statute “and connect the violation to the named

defendants.” *Brownlee v. Conine,* 957 F.2d 353, 354 (7th Cir.1992). Evans fails to connect his

---

[5] While Evans tellingly fails to attach a copy of the OIG complaint to his *Evans II* complaint, it was attached in *Evans I* and is central to *Evans II* and referred to in it, and thus the Court may review its contents for purposes of this motion. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (noting that a Court may consider on a motion to dismiss “documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice”); *Albany Bank & Trust Co. v. Exxon Mobil Corp*, 310 F.3d 969, 971 (7th Cir. 2002) (holding that the court may consider “documents referred to in a complaint that are central to a claim” for purposes of a motion to dismiss); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (holding that the Court may take judicial notice of matters in the public record, including court documents filed in earlier cases).

OIG complaint with the alleged retaliation except in a barebones, conclusory manner. Evans has not alleged that any individual making the alleged adverse employment decision against him actually knew of the OIG complaint or any of the allegations within it. Instead, Evans merely alleges in a conclusory fashion that his speech "was a motivating factor in each of his adverse employment actions…." Compl. ¶ 56. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not satisfy a plaintiff's burden to plead retaliatory motive. *Iqbal*, 556 U.S. at 678. Instead, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Evans has failed to provide any such factual content related to retaliatory motive and causation here. Accordingly, the Court should dismiss Counts I and III.

### B.       Evans's Illinois Whistleblower Act Claim Should be Dismissed

#### 1.       Evans's Illinois Whistleblower Act Claim is Untimely

The Court should dismiss Evans's claim under the Illinois Whistleblower's Act ("IWA") because it is time-barred.  The IWA prohibits an employer from retaliating against an employee who "discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of State or Federal law, rule, or regulation." 740 ILCS 174/15. The Illinois Tort Immunity Act imposes a one year statute of limitations, and courts have held that this applies to claims under the IWA. *See Elue v. City of Chicago*, 2017 WL 2653082 (N.D. Ill. June 20, 2017); *Vasquez v. Board of Educ. for Sch. Dist.* U-46, No. 16 C 7022, 2017 WL 1250839, at *4 (N.D. Ill. Apr. 5, 2017) (collecting cases); *see also Williams v. Office of Chief Judge of Cook Cty. Ill.*, 839 F.3d 617, 627 (7th Cir. 2016) ("It is unclear under Illinois law whether this statute of limitations applies to retaliatory discharge claims under the Illinois Whistleblower Act, although one appellate court seemed to suggest that it might." (citing

*Taylor v. Board of Educ. Of City of Chicago*, 2014 IL App (1st) 123744, ¶ 46)); *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) ("Illinois local governmental entities and their employees, however, benefit from a one-year statute of limitations for 'civil actions' against them." (citing 745 ILCS 10/8-101)); *Taylor*, 2014 IL App (1st) 123744, P 46 ("The parties do not dispute that actions under the Act against public employers are subject to the one-year limitations period set forth in the Local Governmental and Governmental Employees Tort Immunity Act.").

Under the Tort Immunity Act, a cause of action begins to accrue when the plaintiff learns he has been injured, not when he determines that the injury was unlawful. *Thelen v. Marc's Big Boy Corp.*, 64 F. 3d 264, 267 (7th Cir. 1995). Here, Evans returned to work on April 25, 2016. "Upon his return," he was allegedly demoted to Lieutenant, removed from active duty, and tasked with desk duty against his wishes. Compl. ¶ 40. "Soon after his return," he allegedly was threatened to retire, and on May 26, 2016, he allegedly was denied back pay and restoration of rank and benefits. Compl. ¶ 42. As of at least May 26, 2016, though arguably earlier, Evans learned he supposedly had been injured and his IWA claim began to accrue. This case was not filed until July 11, 2017, more than a year after Evans learned of his claimed injury. Thus, Evans's IWA claim is barred by the applicable statute of limitations and should be dismissed.

## 2. The IWA Does Not Provide for Individual Liability

In addition to the one-year statute of limitations bar, Evans fails to state a claim for retaliation under the IWA against O'Neill because there is no individual liability under the IWA. By its own terms, the IWA only creates a cause of action against an employer. *See* 740 Ill. Comp. Stat. 174/30 ("If an employer takes any action against an employee in violation of Section 15 or 20, the employee may bring a civil action against the employer."); *see also*, *Cunliff v. Wright*, 51 F. Supp. 3d 721, 740 (N.D. Ill. 2014) (dismissing individual defendants with

14

prejudice as to the IWA claim); *Martorana v. Vill. of Elmwood Park*, 2013 WL 1686869, *4 (N.D.Ill. Apr. 18, 2013) (quoting *Robinson v. Morgan Stanley*, 2007 WL 2815839, at *15 (N.D.Ill. Sept. 24, 2007) (dismissing individual defendants with prejudice). Accordingly, O'Neill should be dismissed with prejudice as to Count V.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint on the basis of res judicata. Alternatively, the Court should dismiss Counts I and III for failure to state a claim, should dismiss Count V against both Defendants because it is untimely, and should dismiss Count V against O'Neill because he is not a proper defendant under the IWA.

Dated: September 11, 2017     Respectfully submitted,

            By:  s/Daniel J. Collins
                Daniel J Collins
                Isabelle Kountz
                DRINKER BIDDLE & REATH LLP
                191 North Wacker Drive, Suite 3700
                Chicago, Illinois 60606
                Telephone: (312) 569-1000
                Fax: (312) 569-3334
                Daniel.collins@dbr.com
                Isabelle.kountz@dbr.com